We'll now turn to Morrison 22-5014. Good morning, Your Honors. John R. C. C. here from the Federal Defender's Office in Denver for Appellant Critic Morrison. Your Honors, I want to start. We've raised three sentencing claims, and I want to try to share about each of them today. I want to start briefly with our first, which is that the District Court erred in applying 3A.1.3, the Guidelines for Physical Restraint and Enhancement. So there's not a single case that's been identified by the District Court, by the government, by probation, or by us that endorses the application of this enhancement to these facts. Is there a single case that you've identified that rejects application of this principle to a similar fact pattern? Every single case in this course that I've cited inaugurates, I think. So that's different. And the reason I know is because we've had this debate at length in my chambers as to whether cases with more egregious fact patterns that we've said the restraint issue applies to is the same as saying we wouldn't apply it to a lesser situation. It's not just that sort of reverse analogizing. It's the reasoning in those cases, why it doesn't apply there. And the reasoning is rooted in the definition of the guideline in 1B.1.1. So if you go back to the first case, Rogers, where this court said the examples that are listed in 1B.1.1, tying, binding, locking up, are non-exclusive. So in that case, shoo up. They're illustrative. They're not exhaustive. But it's used in generics. It's the same kind again. They're examples of a certain scope, a certain magnitude. And that's why in Rogers, the court had no problem finding that holding a knife to someone's throat during an ATM robbery fits that. Same in Fisher. There wasn't limited physical touching. But holding a gun to someone's head, perhaps, in Chicora, it can be momentary. It can be fleeting. It can be fast. What were the facts here, as you see it, regarding physical restraint? I think it relates primarily to the pizza, right? It's only really based on the pizza. I mean, there was some suggestion. So what was the physical restraint that you say was inadequate? Well, the court wasn't collusive in its reasoning with respect to whether it was touching a wrist, holding a face, or the momentary choking that would have been involved in force-feeding. It doesn't make a difference which one of those it is. I thought it was pretty clear that it was talking about all of those. The hands on the wrist, chin, holding his chin and force-feeding him pizza with sufficient force to cause RT to choke. So why is that not enough? You could kill somebody that way, could you not? I mean, I don't know that any of the testimony, which was hotly disputed below, but we're challenging the court's caution of these facts. Anything in the testimony. You're forcing something down someone's throat to kill somebody, right? I mean, in theory, potentially. In theory. Nothing like that. A momentary choking. Now, I'm not here to defend that contact by any means, right? It's that, and it could be the basis for evidence. It's not a basis to apply. There was a physical restraint, right? I don't think that... You don't think holding somebody and forcing food down their throat doesn't satisfy the definition of physical restraint? You're saying it's not enough. It is a restraint that is physical. It is not physical restraint under the definition of the guidelines for Chapter 3 enhancement. What is the definition under the guidelines? I don't know. Okay, that's fine. What is the definition of the... It includes examples such as physical restraint includes tying, binding, and locking up, right? Does it matter that... I mean, so giving you that, does it matter here that you have a victim that maybe you could restrain them without tying them or binding them or locking them up? That maybe the level of restraint that's sufficient can vary depending on how much restraint is required to restrain the victim. Maybe children are often in restrained high chairs when they're having dinner, right? I mean, no one's argued back here or argued that the sort of implicit size difference between Mr. Morrison and the child necessarily caused restraint. I think what we look to is to be able to go back to just the definition of the guidelines. And this is an aggravating enhancement, a Chapter 3 enhancement meant to capture, you know, particularly egregious conduct. So would your position be... And let's take out any temporal type analysis, but just on amount of force, that with a two-year-old child, you know, it would be the same if... Like, it would be restraint if you put them in handcuffs, but if you held their hands tight where they couldn't pull them loose, one would be restraint for purposes of the guideline and the other would not. It's hard to answer that for reasons that depend so much on context, right? Because the ground line of the enhancement is the facilitation of the offense, right? And so if you're holding hands to a whale on someone in an assault and that is preventing them from escape, then a whale may be the definition. If you lock a child in a room after assaulting them so that those injuries aren't discovered at school, right? That might be locking up, right? But this momentary... But even the court described this as somewhat fleeting, a force-feeding of a toddler months before, you know, the assaults of conduct at issue in this case just isn't what this guideline is meant to capture. If we switch to the temporal aspect, I mean, it has been interpreted to include any relevant offenses, which can be offenses of a like kind, right? And here, it's four months between the pizza and the incidents that are the charged offenses. And we have cases that find relevant conduct much longer than four months. Yeah, I think, you know, I think this is relevant conduct in the loosest of senses. It wasn't challenged that below where I was not raising that as a point of error. So I'm assuming that this is... So you're not challenging the temporal aspect? I think the temporal aspect is not a legal challenge, per se. But I do think, atmospherically, I do think it further undermines applying this in this context. That it's a small event months before and isn't part of the type of abusive conduct that Mr. Morrison was convicted of. But it's not a separate claim. I'm not making a temporal argument with respect to all the conduct. Are you challenging the length of any restraint in the incident? Like, it was just for a few seconds, so that's not long enough, or... You know, I think that, if you go back to Rogers and with Rogers, I think the court was not sort of opening the floodgates to, you know, anything, however attenuated, however minimalist. Chikora, you know, says that it doesn't have to be long, right? We're somewhere right in between that. Well, Chikora's probably the worst case for you. I mean, they tackle him. It's pretty quick. Tackling him, I can't remember if it's a him or her. So they can't escape. And that is enough for the physical restraint enhancement. I mean, you're not that different, really. I think we are, because I think, you know, Chikora, you know, they're tackling someone to prevent, you know, after one assault, to prevent them from escaping, to enable the continued beating into submission, which ultimately culminated in a murder. It's just, you know, forcibly getting a child to eat dinner months before getting this assault conduct. It's just, it's of a different duration, of a different magnitude than what the guideline contemplates. You think the accurate description of this is just getting a child to eat dinner? I'm not trying to minimize it. I really am not. You are trying to minimize it. That's a pretty minimization. To say, that's how you described it, isn't it? You said he's just trying to get the child to eat dinner. Well, I don't have any equipment about it, and I'm not trying to minimize it. So let me rephrase. You know, this is, it's an aggressive and forcible action, and one that obviously was focused. It's in the scheme of how this court has applied this guideline, let alone how other courts would have an even more clear view of when this guideline applies. It just does not come anywhere close. I'm not saying it's not relevant. It's not something the court could consider. It's just not this guideline, and that matters, right? It matters because it sets the guideline range, and that's the starting point. So I'm not urging you to start blowing us up with unpublished decisions in all your briefing in the future. But what do you think about Dickerson? I mean, basically knock somebody down, put your knee in their back, tell them to give you their money. They give it to you, and the person flees the scene, and we find the physical restraint was sufficient. There's no tying. There's no binding. There's no locking. Yeah, I think two things on that. You know, Dickerson, I think there was a dispute about – there was a historical fact dispute to some degree, so I think it's sustainable in that way. But I think the court also said that either of the possibilities would meet the guideline's definition. So it's like the court. It's fleeting, but it's also directly tied to facilitation of the offense conduct in a way that is just not present here. I do want to talk about allocation. I'm sorry, allocation. About allocation, because I think our claim is simple, but it's important. And Ms. Walker's case, I think, is answered by EMS in many ways, and I think ours is answered by both EMS and Slingard in the sense that – EMS and – the court's statement that it was applying – it was going to grant an upper variance was sufficiently definitive. And in context, I think the statement itself, given that the government was asking for one and only one sentence, it absolutely was. And in context, if you read pages 20 to 39 of Volume 3, it is hard to read that as anything other than a definitive articulation of what Mr. Morrison's sentence was going to be. I mean, with respect to your client, as I read in the prior argument, the district judge specifically said that he was rejecting what your client was going to be asking for. Fair? He was rejecting the guideline sentence, yes. Yeah. But, like, whether – I think it points to reality to suggest that the court's ruling was communicating to anyone that the right range was then somewhere between 109 months and life imprisonment, right? It was – I think everyone understood it, as anyone would in reading that, as – How is the judge supposed to respond to motions and sentencing? Should you take everything under advisement until you hear from the defendant, even if the defense attorney doesn't say, hold off on ruling on this until you hear from the defendant? It's – the attorneys on both sides want to hear how the judge feels about the motion as presented by the attorneys. And then, after that's decided, you can figure what sort of argument you might want to make at allocution. You're not giving – you're not giving the information that the attorneys want, and they did not request – well, go ahead. Respond. I mean, this court – I mean, this court's accountants, district courts, announcing how they're leaning, how they're thinking about it. I'm inclined to grant this. Nothing wrong with that. It's very helpful. Probably best practice. This wasn't what happened – it's not what happened here. So what – so how – are you saying district courts should deal with motions for variance or motion for a guideline sentence, motion for a variance downward? So they should not rule on those until there's allocution. Is that what you're saying? I think they can in some circumstances, but – Well, what circumstances would it be appropriate to rule on that? Because a ruling on that, in your view, results in something definitive. Not what the sentence is, but it's – do you think definitive enough on this one? Sure. You can say that I'm inclined to go up to a particular guideline range. That gives the parties the information. That's not what your clients – that's not what either party requested of the judge. The parties each asked for a ruling on a motion, and the judge simply should not rule on those motions until hearing from the defendant, even though the defendant might want to know which way the court is leaning before speaking to the court. I don't think there's anything that obligates the court to make that ruling. I think it's – as this court recognizes, best practice would probably be to give some indication of how it's ruling, so the parties and the defendant can appropriate the allocution to then make that ruling. That's the best answer I can give you based on what this court has said, but I think here – Do you give any authority from any other circuit, for example, saying that the court should not rule on such motions for variance or departure or whatever? Do they need to sentence until hearing from the defendant at allocution? Is there any authority for that? No, I don't have anything out of that circuit. I think the best authority for us is Slinkard. Well, Slinkard – I mean, Slinkard definitively said, I can't imagine – there's no way in good conscience that I could ever allow this defendant to be among the public or near any child. I mean, that's a little more definitive than what happened here. I grant you that it is more definitive, that this case is a lot closer to the definitiveness in Slinkard than to the lack of definitiveness that's been found elsewhere. The court granted the motion for – which was asking for one sentence, one sentence only, and it literally said that it was imposing a sentence when it did so. That precise language is there to establish an appropriate sentence in this matter. The court has taken into consideration the 33 factors and listed the factors it actually considered. That's at 12-3-36. I think it's about as definitive as it gets. I don't have to take any questions. The court may have them. Thank you. Good morning. Again, my name is Chantelle Dial, and I represent the United States. I'd like to start with the restraint question, because we were talking about a possible definition. And counsel's already pointed out the definition in the guidelines, and this court did discuss chokora. But there, what I'd like to point out is that the chokora piece said that physically restrained includes preventing the victim from doing something or otherwise keeping the victim under the defendant's control. The trial evidence here clearly established that the defendant used the appellant – excuse me, used physical force to keep Artie under his control. He grabbed his face, he pinned his hands down, he shoved food until Artie choked. And Artie was entirely subject to the defendant until the defendant ended his physical restraint. Do you think this court in its decisions has drifted a little far from the examples in the guidelines, such as being tied, bound, or locked up? I realize they're examples, but we do have a concept of like and kind. Have we maybe drifted too far from the actual language? Respectfully, I don't believe so, because the cases that expanded, if they're expanding it, are just further examples still of a defendant keeping a victim within their control. Tied, bound, or locked up is the defendant is exercising physical control over the victim and preventing the victim from doing something, from being able to escape. And so Dickerson and Toro in particular, they're not drifting away from that. They're giving other examples of someone being completely restrained and unable to act on their own. If there aren't any other questions on that one, I'd move to the allocution portion. The appellant is, in effect, asking the court to adopt a rule that the best practice is allocution happens first. That can't be the rule, because if a court was entirely silent on PSR objections, on variance, and any variance or departure motions, then what we would have happening is a defendant could get up, request probation, make a heartfelt, or what the defendant believes is a heartfelt, allocution, and then sit down and the district court sentences them to 30 years. And the defendant has no opportunity at all to address the district court's concerns. Well, I think the case law, if you look at it, is a definitive statement before allocation, as we've ruled and the Supreme Court has ruled, is unconstitutional. And so it can't be definitive. You can say, I'm leaning toward, or I see it unlikely that I'm going to grant probation, or these are the factors that I'm concerned about. But the problem is when there's a definitive statement, or we have also held, where you foreclose a particular area of allocution. Like if the court said, I'm not even going to listen to you about probation. That would be inappropriate, I think, under our case law and the Supreme Court's case law. Yes. But if the rule that the argument was the best practice where allocution would happen early, so there couldn't even be an implicit limitation. I didn't hear that. He said the best practice was to say how you're leaning. And that is what, that's the rule that should, the rule should allow that. To allow the district court to give the defendant an opportunity to know how the district court is leaning. So, now let's go back to your transcript. You asked for an upward variance of a specific amount, right? Yes. And you were trial counsel? Yes, I was. Yeah. And so the judge, after talking about the 3553A factors, says, therefore the government's motion will be granted in terms of a request for an upward variance. So, that suggests that your motion and the amount of time it requested was going to be the sentence. And it was, right? I mean, he sentenced, you got your sentence. Yes, that was the sentence. But respectfully, no, he was not definitively saying that, the district court was not definitively saying that he was going to give the defendant the 25 years. The language is, in terms of, he granted the government's motion in terms of the request for an upward variance. Okay, so he did say he was going to give an upward variance. Yes. And the defendant had requested a within-guideline sentence and opposed an upward variance. So, if the defendant was going to say anything about his position, how is he supposed to get up and say, Judge, I wish you would consider giving me a guideline sentence? Because the judge has just foreclosed that, don't you think? He didn't definitively foreclose it because he has not announced a guideline sentence. This kind of goes to the issue we were discussing. Well, I mean, but that's, I mean, you don't get to allocute after the final sentence is imposed. But unlike Joggy, the district court here didn't say you can't speak to or still request a guideline sentence. True, true, but I guess the issue is not that there was an express prohibition, but an implied limitation that anything less than something more than a guideline sentence wasn't going to be entertained. The court gave the defendant an indication that it was not going to entertain a guideline sentence. He didn't give an indication. He granted a motion saying there wouldn't be a guideline sentence. Yes. Right. But that's different from a definitive statement before allocution. And it's different from the other cases where the district courts limited the defendant from even discussing a guideline sentence. The defendant still could have requested the guideline sentence. The court just ruled on the variance motions before giving the defendant an opportunity for allocution. Do you think it matters that he stated on the record his opinion, and I say when he, that the district court stated his opinion on the application of the 3553A factors before he granted the motion? No. I mean, because doesn't that suggest that the 3553A balancing has already been done? Yes. It suggests that the court has already done some of the 3553A balancing. But all of the, I don't know if I should say all, but many of this court's prior cases have instances where judges have already weighed the 3553, are discussing this is my intention or this is the tentative sentence. So where the court weighs or says that he's weighed the 3553A factors falls doesn't change here the opportunity for allocution. I guess to step back and look at the purpose of allocution, I mean, it's supposed to be an opportunity for the defendant who the Supreme Court has said is in the best position to explain all of the circumstances and why mercy should be shown to him to a trial judge, sentencing judge with an open mind. And part of the requirement that you not sentence him before the defendant has this opportunity to speak is to retain some meaning in that act and to encourage a defendant who's in a pretty imbalance of power situation to take the opportunity to express what no one else can express but that human being. And so, I mean, that seems to be what we're losing in the discussion here is by doing it the way this district court did it, did he undermine the purposes of allocution with respect to a guideline sentence? No, and it's because of what the court said about the defendant needs a meaningful opportunity to allocate. Here the district court decided in various waivers before giving the defendant that opportunity, making the defendant's opportunity more meaningful. But it's not meaningful at all if what he wants to say is give me a don't go over the guidelines. It's taken all meaning out of that and, you know, even though this isn't a case where he said I don't want to hear from you, there's certainly a message that says I've already decided this issue is closed. And in this case, the defendant, Mr. Morrison, didn't say anything, just said I'll waive allocution. And that's my concern here. And if the court had given a definitive statement of sentence, then it would have been an allocution error. Well, I'm suggesting to you that you can't limit any subject matter in the allocution, and that if you have said I won't listen to any arguments for an in-guideline sentence, you've limited the allocation in a way that's inappropriate. And you're saying, well, it wasn't a direct, he didn't say I won't listen to you, and I'm suggesting that perhaps it was implicit, that this was a subject that was off the table. To remove an implicit, this subject's off the table, would require the district court not to rule on the variance. No, it would require the district court to say I'm leaning against allowing a guideline sentence. I'm leaning towards an upward variance. And that's what we've approved with regards to the actual sentence. I'm considering a sentence of this long, or I'm considering this, but they don't actually do it, giving a message, but I want to hear from you before I make a final decision. There's really, I mean, I don't think you can say anything new to that. And I'd like to, to the extent you're going to answer, I'd like to jump in on that a little bit myself. Because I listen to this, and I think to myself, okay, one of the things we want to do is make sure we hear, that the district court hears from the defendant. And I think building on what Judge McHugh says, that what we don't want to do is create a situation where the defendant thinks, no matter what I say, this court's mind is closed. He's made up his mind as to this variance, so I'm not even going to speak. But that can have other effects on sentencing. Because some of the things you hear in allocution are a defendant express regret for committing a crime, a defendant taking responsibility for what they've done, a defendant explaining things that might indicate why they should be granted mercy. And by foreclosing something that's an important issue, and giving the defendant the idea that no matter what they say, the court's mind is made up, we also close the discussion on those other things, which can be important. What do you think about that? I think that there is an important balance in here, between ensuring that the defendant has enough information from the district court to be able to meaningfully address the court without limiting the defendant's important right to be able to speak for himself. And if ruling definitively on an upward variance is, in this court's view, improper, then that error occurred here. But ruling on the upward variance still does not give a definitive statement, and requiring district courts to use the right language, special language beforehand, saying that the district court didn't say, I will not consider anything else. He said he was granting the upward variance, but he didn't preclude that the defendant could get up and ask the court to reconsider even granting the upward variance. Asking district courts to use the exact correct tentative language doesn't further the goal here, which I believe is to have meaningful sentencing hearings for both the judge and the defendant. I see my time is about up. If there aren't any further questions, the government can just ask the court to affirm. Thank you, counsel. 22-5005 and 22-5014 are submitted, and counsel are excused.